UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CARLOS MARTIN ESTRADA VEGA,

        Plaintiff,

   -against-

GATEWAY BANK F.S.B.,

        Defendant.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

2:24-cv-08000 (JMA) (JMW)

**A P P E A R A N C E S:**

   Carlos Martin Estrada Vega
   *Pro Se Plaintiff*

   Timothy W. Salter, Esq.
   **McCarter & English LLP**
   250 W. 55th Street, 13th Floor
   New York, New York 10019

   Robert B. Kaplan, Esq.
   James M. Neudecker, Esq.
   **Jeffer Mangles Butler & Mitchell LLP**
   Two Embarcadero Center, Fifth Floor
   San Francisco, CA 94111
   *Attorneys for Defendant*

**WICKS,** Magistrate Judge:

*Pro se* Plaintiff Carlos Martin Estrada Vega ("Plaintiff" or "Vega") commenced this action against Defendant Gateway Bank F.S.B. ("Defendant" or "Gateway") asserting that a mortgage he obtained through Defendant for a property in Jamaica, New York is unenforceable. He claims unenforceability based upon Defendant's alleged violation of "Section 33 of the 1863 National Bank Act" by failing to countersign the note on that mortgage and because Defendant

1

failed to cure this alleged violation under the doctrine of accord and satisfaction. (ECF No. 1-1 at ¶¶ 7, 9.)

Defendant has filed a pre-motion letter in anticipation of its motion to dismiss (ECF No. 7). Before the Court is Defendant's motion to stay discovery (ECF No. 20) pending its anticipated motion to dismiss the Complaint. For the reasons stated herein, Defendant's motion to stay (ECF No. 20) is **GRANTED**.

## I. BACKGROUND

Plaintiff's action arises out of his purchase of property located at 145-74 226 Street, Jamaica, New York 11413, secured by a $512,000 mortgage from Defendant (the "Property"). Plaintiff claims Defendant, or its agent, failed to countersign the note for the mortgage "as required by section 33 of the 1863 National Bank Act . . . .".[1] (ECF No. 1-1 at ¶¶ 2, 7.) This alleged violation presumably created a "bona fide" dispute regarding Plaintiff's loan, and Plaintiff contends that Defendant breached the party's mortgage agreement by continuing to accept mortgage payments despite accepting money orders stating the payment was "in full satisfaction" of the supposed "bona fide" dispute. (*See id.* at ¶ 9.) Indeed, Plaintiff maintains that Defendant's breach of the mortgage documents renders the mortgage unenforceable and therefore requests "a writ of injunction for breach of contract and settlement and closure" of the Gateway mortgage, a $1,024,000 "penalty" against Gateway, and the return of $15,993 in payments "submitted under duress after the Bona fide Dispute was accepted," and court costs. (*Id.* at ¶ 18.)

Plaintiff commenced this action on October 21, 2024 in New York State Supreme Court, Nassau County (ECF No. 1 at ¶ 1), which was timely removed to this Court on November 18,

---

[1] Plaintiff cites that the 1863 National Bank Act is codified as 12 U.S.C. § 411 and/or 31 U.S.C. § 3113.

2024 on diversity jurisdiction grounds.[2] (*Id.* at ¶¶ 11-13.) Shortly thereafter, on November 20, 2024, Defendant filed its letter motion for a pre-motion conference in anticipation of its motion to dismiss[3] Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.) Plaintiff filed his opposition on December 2, 2024. (ECF No. 9.)

On January 10, 2025, Defendant filed the instant motion to stay discovery pending the outcome of Defendant's anticipated motion to dismiss the Complaint (ECF No. 20), which Plaintiff opposes. (ECF No. 21.)

## II.     THE LEGAL FRAMEWORK

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Thomas v. N.Y. City Dep't of Educ.*, No. 09-CV-5167, 2010 WL 3709923, at *2 (E.D.N.Y. Sept. 14, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  The mere filing of a dispositive motion, in and of itself, does not halt discovery obligations in federal court.  That is, a stay of discovery is not warranted, without more, by the mere pendency of a dispositive motion.  *Weitzner v. Sciton, Inc.*, No. CV 2005-2533, 2006 WL 3827422, at *1 (E.D.N.Y. Dec. 27, 2006).  Rather, the moving party must make a showing of "good cause" to warrant a stay of discovery.  *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006). In evaluating whether a stay of discovery pending

---

[2] Plaintiff resides in Floral Park, New York, and is thus a citizen of New York. (ECF No. 1 at ¶ 11.) Additionally, Defendant maintains a home office in Oakland, California and as a national bank is a citizen of California for diversity jurisdiction purposes. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) (noting a national bank is a citizen of the state in which its main office is located).

[3] The Hon. Joan M. Azrack set a briefing schedule for Defendant's motion to dismiss, directing that Defendant's moving papers be served by February 18, 2025, Plaintiff's opposition by February 24, 2025, and Defendant serve its reply by March 3, 2025. (Electronic Order dated February 4, 2025.) These papers are to be filed on ECF by March 5, 2025. (*Id.*)

resolution of a motion to dismiss is appropriate, courts typically consider: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *Id.* (citation omitted). "Courts also may take into consideration the nature and complexity of the action, whether some or all of the defendants have joined in the request for a stay, and the posture or stage of the litigation." *Id.* (citation omitted).

It is against this backdrop that the Court considers the present application.

### III.   ANALYSIS

**A. Whether Defendant Has Made a Strong Showing That Plaintiff's Claims Are Unmeritorious**

Defendant asserts that the stay ought to be granted because Plaintiff's claims are likely to be dismissed in their entirety because: (1) Plaintiff failed to disclose this lawsuit in Plaintiff's bankruptcy proceedings; (2) Plaintiff created, and thus caused, a self-inflicted injury; and (3) Plaintiff's underlying dispute is based on a violation of non-existent law. As set forth below, the Court finds that Defendant has made the requisite strong showing that Plaintiff's claims are unmeritorious.[4]

**(1) Effect of Failure to Disclose the Claim in Bankruptcy Proceeding**

Defendant first argues that Plaintiff failed to list the current claim against Defendant among his assets when Plaintiff filed for Chapter 7 bankruptcy protection in the Eastern District of New York in July 2024. (ECF No. 20 at p. 2.) Indeed, Defendant contends that Plaintiff's "failure to schedule his claim against Gateway divests him of standing to prosecute this lawsuit."

---

[4] The Court's consideration and analysis of the arguments set forth in the motion to dismiss is purely for purposes of weighing whether a stay should be granted. This analysis should not in any way be construed as prejudging the merits or predicting the outcome of the anticipated motion to dismiss.

4

(*Id.*; *see* ECF No. 20-2.) Similarly, Defendant avers that the doctrine of judicial estoppel prevents a party "who fail[s] to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy." (ECF No. 20 at p. 3.) Conversely, Plaintiff argues that the Property was not part of his bankruptcy estate because it was quitclaimed to his ex-spouse as part of a divorce stipulation. (ECF No. 21 at p. 2.) Additionally, Plaintiff asserts that post-bankruptcy claims unrelated to the estate are not subject to judicial estoppel, and therefore, his failure to disclose this claim would not strip him of standing to bring this suit. (*Id.*)

Here, at this juncture, it appears that Plaintiff's claim was eligible for disclosure in his bankruptcy proceeding. Plaintiff filed this action on October 21, 2024, and his Bankruptcy proceeding was discharged on October 25, 2024. (*See* ECF No. 20 at p. 2.) Moreover, Plaintiff initiated the "accord and satisfaction process" on May 28, 2024 and the first payment designated "paid in full" was accepted by Defendant on June 17, 2024. (*See* ECF No. 12 at pp. 1-2.) Under 11 U.S.C. § 521(a)(1)(B)(i), the debtor has the duty to file a list of creditors, and "unless the court orders otherwise" a schedule of assets and liabilities. Notably, "a debtor is under a duty both to disclose the existence of pending lawsuits when he files a petition in bankruptcy and to amend his petition if circumstances change during the course of the bankruptcy." (*Thomas v. JP Morgan Chase, N.A.*, No. 11-CV-3656 (JG) (RML), 2012 WL 2872164, at *1 (E.D.N.Y. July 11, 2012) (noting a debtor has the obligation to amend filings to "disclose any assets" she previously omitted while the bankruptcy case remains open) (citation omitted). Indeed, the fact that the Property was quitclaimed to his ex-spouse does not release Plaintiff from disclosing his current claim against Defendant in his bankruptcy proceeding because it was still in course when Plaintiff filed this suit. *See Kassner v. 2nd Avenue Delicatessen Inc.*, No. 04 CV 7274 (GBD),

2005 WL 1018187, at *3 (S.D.N.Y. Apr. 29, 2005) ("[T]he debtor loses all rights to pursue an undisclosed cause of action in his own name.").

Accordingly, at this stage, Defendant has made a strong showing that Plaintiff's claim should have been disclosed in his bankruptcy proceeding and, therefore, would be judicially estopped from bringing the action.

**(2) Creation of a Self-Inflicted Injury**

Defendant next argues that Plaintiff's injuries were "self-inflicted." (ECF No. 20 at p. 3.) Specifically, as maintained, Plaintiff does not allege that Defendant foreclosed on the Property or took any other adverse action against him or his ex-spouse who eventually possessed the Property. (*Id.*) Rather, as Defendant maintains, Plaintiff continued sending payments to Defendant, which it then accepted, despite already making a payment, as alleged, that was "in full satisfaction" of Plaintiff's mortgage. (*Id.*) As such, Defendant posits that "Vega cannot manufacture a self-inflicted 'injury' by making payments he contends he did not have to make," thus "Vega simply has no injury." (*Id.* at pp. 3-4.)

In contrast, Plaintiff argues that its injury is "directly tied to Defendant's refusal to honor the binding accord and satisfaction, resulting in financial uncertainty and the withholding of [his] legal and financial rights." (ECF No. 21 at p. 4.) Particularly, Plaintiff asserts that "Defendant's breach constitutes actionable harm due to their failure to comply with the accord" and "the continued assertion of the loan's validity after acceptance of settlement payments places an undue financial burden and risk on [him]." (*Id.*)

A self-inflicted injury is an injury that results from a plaintiff's personal choices, rather than a defendant's conduct. *Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *10, n.5 (E.D.N.Y. Sept. 9, 2013). Notably, where a self-inflicted injury exists, a plaintiff lacks standing

6

to seek redress for that injury. *Id.*; *see Capogrosso v. Gelbstein*, No. 18-CV-2710 (MKB) (LB), 2019 WL 4686448, at *6 (E.D.N.Y. Sept. 25, 2019) (collecting cases where a plaintiff fails to establish injury for standing where the injuries are self-inflicted). Here, it appears that Vega's continued payments, and Defendant's acceptance of those payments, made after Defendant accepted a money order "in full satisfaction" of the mortgage, constitutes self-inflicted injury which is insufficient to confer standing upon Plaintiff. *See also Castro v. NewRez LLC*, No. 22-CV-06340 (PKC) (JMW), 2024 WL 4242138, at *5 (E.D.N.Y. Sept. 19, 2024) (finding plaintiff lacked standing where his own action relating to his outstanding mortgage loan balance was the primary cause of the alleged injury and not the challenged conduct of defendants).

Accordingly, at this stage, Defendant has made a strong showing that Plaintiff's "injury" is self-inflicted and therefore Plaintiff may not seek redress for that injury through this action.

**(3) Accord and Satisfaction**

Defendant next argues that to invoke the doctrine of "accord and satisfaction," there must be a "bona fide" dispute made up by payment of less than the full amount claimed to be owed. (ECF No. 20 at p. 3.) Specifically, Defendant posits that Plaintiff "seemingly alleges" that the "bona fide dispute" arises from Defendant either countersigning the promissory note, or failing to countersign it, in purported violation of "Section 33 of the 1863 National Bank Act." (*Id.*) Notably, Defendant argues this law simply does not exist as the original Section 33 has long since been repealed. (*Id.*) Moreover, as Defendant maintains, though Plaintiff argues this statute is "codified at 12 U.S.C. § 411 and/or 31 U.S.C. § 3113," neither statute is relevant to the current mortgage action. (*Id.*) Accordingly, Defendant concludes that "[t]here cannot be a 'bona fide' dispute about Gateway's compliance with a non-existent law." (*Id.*)

7

Plaintiff, in response, argues a bona fide dispute does exist as evidenced by his letter sent on May 28, 2024 to Defendant indicating discrepancies in the loan and requesting resolution of them. (ECF No. 21 at p. 7.) Additionally, after Plaintiff raised these issues which allegedly constituted a bona fide dispute, Plaintiff contends that Defendant's subsequent acceptance of money orders marked "'paid in full' resolves the bona fide dispute and constitutes a binding accord and satisfaction." (*Id.* at p. 3.) Indeed, Defendant's failure to refund the payments, as Plaintiff avers, "reinforces the validity of the accord." (*Id.*) Lastly, Plaintiff contends that "[a]lthough Section 33 of the National Bank Act is no longer an active statute, its historical principles reflect broader regulatory and common-law standards that safeguard against the misuse of secured interests." (*Id.* at p. 4.)

Here, at this stage, it appears Plaintiff's assertion of a claim for accord and satisfaction lacks merit. "An accord and satisfaction consists of a bona fide dispute, an agreement to settle that dispute, and performance of that agreement." *Avocent Redmond Corp. v. Raritan Americas, Inc.*, No. 10 Civ. 6100 (PKC), 2012 WL 3114855, at *11 (S.D.N.Y. July 31, 2012) (citation omitted). A bona fide dispute exists if "there is either a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts." *Tate v. Navient Sols., LLC* (*In re Navient Sols., LLC*), 2023 WL 3487051, at *2 (2d Cir. May 17, 2023).

Nothing alleged supports a finding that a bona fide dispute exists. Plaintiff's purported grounds for Defendant's liability was its alleged violation of Section 33 of the 1863 National Bank Act. Such a basis for liability appears improper considering this statute was repealed in 1864 and is no longer in effect. *Bank of Am. Nat'l Ass'n v. Derisme*, 743 F. Supp. 2d 93, 99 (D. Conn. 2010). Additionally, the statutes relied upon by Plaintiff—contending Section 33 is now

8

codified as 12 U.S.C. § 411 and/or 31 U.S.C. § 3113—also do not lead to a conclusion that a bona fide dispute exists. Specifically, § 411 authorizes and addresses the issuance of federal reserve notes at the discretion of the Federal Reserve Board. *See* 12 U.S.C. § 411; *see also Isaac v. Shiff*, No. 21-CV-11078 (PMH), 2023 WL 2058623, at *4 (S.D.N.Y. Feb. 16, 2023) (finding section 411 authorizes the printing of federal reserve notes). Similarly, § 3113 relates to gifts made to the United States Treasury Department to be used to reduce the public debt. *See* 31 U.S.C. § 3113; *see also Harrington v. Sterling* (*In re Sterling*), 558 B.R. 671, 683 (S.D.N.Y. Bankr. 2016). Nowhere in Plaintiff's Complaint or motion papers does he indicate that his action relates to federal reserve notes or gifts to reduce public debt. Accordingly, it appears that these three statutes do not provide the basis for Plaintiff to maintain his assertion that a bona fide dispute exists against Defendant.

Further, an accord and satisfaction will only be found where there is a "clear manifestation of intent by the parties that the payment was made, and accepted, in full satisfaction of the claim." *Williams v. Million*, No. 22-CV-6554-FPG, 2023 WL 5846721, at *3 (W.D.N.Y. Sept. 11, 2023) (citing *TIAA Global Invs., LLC v. One Astoria Square LLC*, 7 N.Y.S.3d 1, 11 (1st Dep't 2015)); *see also Lamb v. Emhart Corp.*, 47 F.3d 551 (2d Cir. 1995) ("In order to prove an accord and satisfaction, the defendant must show at the time of the agreement a good faith dispute existed over the existence of a debt or over an amount owed, and that the debtor and creditor negotiated a contract of accord to settle the claim."). It seems apparent at this juncture that there was no prior agreement where Defendant's contracted that its acceptance of payment served to satisfy or settle any bona fide dispute between the parties, assuming a bona fide dispute even existed. *See Williams*, 2023 WL 5846721, at *3 (noting that because *pro se* plaintiff failed to clearly allege what claim, dispute, or obligation existed between

9

her and defendant prior to the alleged accord and satisfaction, her accord and satisfaction claim failed and was dismissed). Accordingly, it is apparent that Plaintiff cannot maintain a claim for accord and satisfaction.

### B. Breadth of Discovery and the Corresponding Burdens

Defendant posits that although the breadth of discovery is "unknown at this point," Defendant believes that Plaintiff will seek broad discovery unrelated to the current lawsuit. (ECF No. 20 at p. 4.) Moreover, Defendant contends that having to engage in any discovery is prejudicial to it "given the strong likelihood the Court will dismiss Vega's lawsuit with prejudice." (*Id.*) On the other hand, Plaintiff maintains that its discovery requests are "narrowly tailored" and directly tied to the current lawsuit. (ECF No. 21 at p. 4.) Further, Plaintiff avers that any undue burden is outweighed by the importance of resolving this dispute on its merits. (*Id.*)

The breadth of potential discovery and burden in responding warrant staying the action pending the anticipated motion to dismiss. Indeed, the claims here seem to reach back as far as 2008—the year that Vega purchased the note which Defendants purportedly violated. (*See* ECF No. 1-1 at ¶ 3.) A scope of discovery that could possibly span a decade militates in favor of a stay of discovery. *See O'Reilly v. Incorporated Village of Rockville Centre*, No. 23-cv-04249 (NCM) (JMW), 2024 WL 2054868, at *7 (E.D.N.Y. May 8, 2024) (determining, where the specific disputes dated "as far back as 2014, it would be especially prudent to reserve any discovery until after the motion to dismiss [was] decided").

Furthermore, where, like here, the sole defendant seeks to dismiss the entirety of the complaint, a stay is appropriate. *See Mineo v. Town of Hempstead*, No. 22-CV-04092 (JMA) (JMW), 2023 WL 7283784, at *2 (E.D.N.Y. Nov. 3, 2023) (noting, where defendants' motion to dismiss sought to "dismiss of the entire complaint," that it would be "most prudent" to avoid the

10

costly expenses of discovery conducted in the interim before the motion is decided). Therefore, the reach of discovery sought by Plaintiff, and the corresponding burden that would be placed upon Defendant, tend to counsel in favor of granting the stay "because the parties could not only avoid substantial hardship, but also prevent a waste of precious resources . . . pending the outcome of the motion to dismiss." *Alloway v. Bowlero*, No. 24-CV-04738 (JS)(JMW), 2024 WL 4827752, at *6 (E.D.N.Y. Nov. 18, 2024); *see Romain v. Webster Bank N.A.*, No. 23-cv-05956 (NRM) (JMW), 2024 WL 3303057, at *5 (E.D.N.Y. July 2, 2024) ("[D]iscovery should be stayed given that all discovery would be for naught if the Complaint is dismissed in its entirety by Judge Morrison as requested."); *see also Fiordirosa v. Publishers Clearing House, Inc.*, No. 21-CV-6682 (PKC)(JMW), 2022 WL 3912991, at *3 (E.D.N.Y. Aug. 31, 2022) (granting a stay where "any prejudice to Plaintiffs would be short-lived in that once the Court rules on [the] motion to dismiss, discovery will either move forward, or will no longer be necessary as the ruling on the motion may reduce, if not eliminate, Plaintiffs' claims."). Accordingly, the breadth and corresponding burdens of discovery justify granting the stay.

### C. <u>Risk of Unfair Prejudice if Stay is Granted to the Party Opposing the Stay</u>

Defendant avers that the risk of unfair prejudice to Plaintiff weighs in favor of staying discovery because the note supposedly giving rise to the bona fide dispute was formed in 2008 and Plaintiff filed the current action sixteen years later in 2024. (ECF No. 20 at p. 4.) Therefore, as Defendant maintains, because this case is in its nascent stages, having to wait a few more months, if that, to commence discovery is not prejudicial to a litigant who has waited so long to sue. (*Id.*) Conversely, Plaintiff argues that he submitted multiple documented attempts to raise the dispute with Defendant, all dated in 2024, evidencing his timely attempts to flag Defendant's alleged violations. (ECF No. 21 at pp. 5-6.) Also, Plaintiff posits that the 2008 note merely

11

establishes Defendant's original obligation, whereas the current action relates to Defendant's breach of the accord and satisfaction in 2024. (*Id.*) Lastly, a delay in discovery, as Plaintiff contends, "significantly impacts [his] ability to gather evidence" like evidence relating to ownership of the note and mortgage, evidence of statutory compliance, and evidence relating to discrepancies in the mortgage securitization process. (*Id.*)

At this stage, the risk of potential prejudice Plaintiff could suffer from the stay, if any, is little. Most notably, this case is still in its nascent stage. Though an Initial Conference was held on December 19, 2024 (ECF No. 17), no discovery has begun because the undersigned adjourned the parties' deadline to submit their proposed discovery schedules in light of Defendant's pending motion to dismiss. (*See* Electronic Order dated December 5, 2024); *see Amron v. 3M Minnesota Mining & Manuf. Co.*, No. 23-CV-08959 (PKC) (JMW), 2024 WL 263010, at *3 (E.D.N.Y. Jan. 24, 2024) (holding that a stay would not result in any material prejudice to plaintiff where a discovery schedule has not been set and discovery has not begun).

Moreover, a briefing schedule has already been implemented for Defendant's motion to dismiss (*see* Electronic Order dated February 4, 2025), with the motion to be fully briefed on March 3, 2025 and bundle filed on ECF on March 5, 2025. A stay, therefore, would be for only a limited period of time. *See Integrated Systems and Power, Inc. v. Honeywell Intern., Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (imposing a stay during the pendency of a motion to dismiss where briefing on the motion would be completed within one month and a stay would therefore delay commencement of discovery "for only a few months"). Similarly, it is all the more reason to stay discovery where, as here, Plaintiff could have brought his action sometime in the sixteen-year window between 2008 and 2024 but did not do so. *See Hewlett Packard Enter. Co. v. Aqua Systems, Inc.*, No. 23-CV-05640 (RPK) (JMW), 2024 WL

12

1159000, at *10 (E.D.N.Y. Mar. 18, 2024) (finding a stay appropriate where it was plaintiff's own decision to "wait years" to commence the action, and thus staying discovery "for a few more months" was not prejudicial).

Lastly, any risk of spoliation has not been identified and is unlikely under the circumstances. *See O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), No. 17-CV-8709 (LTS)(GWG), 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018) (concluding the risk that documents may be destroyed is "one of the usual litigation risks that affect all parties equally" and "does not constitute sufficient prejudice to warrant denying a stay of discovery").

### IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to stay discovery (ECF No. 20) is **GRANTED**. In the event the motion to dismiss is denied, the parties are directed to file a joint proposed schedule for discovery within 10 days of the ruling on the motion to dismiss. Defendant is directed to serve a copy of this Memorandum and Order upon Plaintiff by email on or before February 14, 2025, and file proof of service on ECF.

Dated: Central Islip, New York
       February 12, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*
         JAMES M. WICKS
         United States Magistrate Judge